IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KARIN REIDY,

    Plaintiff,

    v.                                  Civil Action No. PX–16–2926

THE UNUM LIFE INSURANCE
COMPANY OF AMERICA, *et al*.

    Defendant(s).

******

**MEMORANDUM OPINION**

Plaintiff Karin Reidy (Reidy) brought this suit against Unum Life Insurance Company of America and The Squire Patton Boggs Group Long Term Disability Plan (collectively "Defendants"), seeking a declaration of entitlement to disability benefits, payment of back-benefits plus interest, and costs pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Pending before the Court are cross-motions for summary judgment. ECF Nos. 35 & 38. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED and Reidy's cross-motion is DENIED.

**I.    BACKGROUND**

Reidy is a former employee of the law firm then known as Patton Boggs, where she served as the Director of Professional Development and Retention for the firm's Washington, D.C. office until her termination in May 2014. While at Patton Boggs, Reidy was a plan participant under a group benefits plan established by Patton Boggs, the Squire Patton Boggs Group Long Term Disability Plan ("the Plan"). ECF No. 1 at ¶ 6; *see also* ECF No. 8.

Defendant Unum Life Insurance Company of America ("Unum") is the claims administrator and insurer of the Plan. ECF No. 1 at ¶ 7; *see also* ECF No. 6.

Reidy has received treatment for recurrent episodes of major depression since 1987. *See* UA-CL-LTD-000042–45. Around March 2014, Reidy's depression worsened, and she took a leave of absence on the recommendation of her employers, "because [Reidy] was looking and behaving in a manner that raised concerns."[1] UA-CL-LTD-000688. Reidy was approved for Short Term Disability ("STD") leave on April 7, 2014, for a period of three months, from April 7, 2014 through July 10, 2014. UA-CL-LTD000459. According to one of Reidy's psychiatrists, Dr. Michael Silver ("Dr. Silver"), Reidy's symptoms improved somewhat following time away from work, but at the encouragement of Patton Boggs' Human Resources department, Reidy decided to continue full-time treatment through the end of her STD leave. UA-CL-LTD000459. At or around May 30, 2014, Patton Boggs merged with another law firm. Reidy's position was eliminated, and she was subsequently terminated. UA-CL-LTD000459; UA-CL-LTD-000490.

Reidy applied for Long Term Disability ("LTD") and Life Insurance Premium Waiver ("LPW") benefits on January 19, 2015. *See* UA-CL-LTD-000042–45. In her application, Reidy identified her medical condition as "major depression." She further described her symptoms as including "negative ruminations, confusion, inability to function due to disorganized thoughts, constant fear, zero confidence in self, uncontrollable crying, uncontrollable negative thoughts, inability to concentrate," and "more." UA-CL-LTD-00042–43. Reidy listed her current medical

---

[1] At summary judgment, Reidy asserts that she took leave "on the advice of emergency room personnel." *See* ECF No. 38 at 1. However, nothing in the record supports this assertion. Rather, the record decidedly reflects that Reidy took leave based her employer's recommendation, and with the subsequent agreement of one of her physicians. *See* UA-CL-LTD-000651–52; UA-CL-LTD-000656, UA-CL-LTD-000668–69; UA-CL-LWOP-000352–53. Reidy's Disability Claims form also indicates no hospital visits or admissions within the past twelve months. UA-CL-LTD-000044.

treatment providers as two psychiatrists, Dr. Silver and Dr. Kamal Jojodia ("Dr. Jojodia"). UA-CL-LTD-00044.

Two psychiatrists, employed by Unum, reviewed Reidy's claim: Dr. Nicholas Kletti ("Dr. Kletti"), Dr. Stuart Shipko ("Dr. Shipko"), with Dr. Kletti performing initial review. Reidy's file was also examined by two registered nurses, Rachelle Mack and Allyce Hawkes. UA-CL-LTD-000408–11, UA-LWOP-000214–18; UA-CL-LTD-00507–10, UA-CL-LWOP-000323–26. Defendants' review consisted of telephone interviews of Reidy on February 16, 2015, and July 29, 2015, medical records provided by Dr. Silver (psychiatrist), Dr. Jajodia (psychiatrist), and Reidy's psychotherapist, Brian Corrado, and monitoring Reidy's online activity, such as posting on job-search websites and message boards. *See, e.g.* UA-CL-LTD-000538–546, UA-CL-LTD-000647–52; UA-CL-LTD-000656–57, UA-CL-LTD-000675; UA-CL-LTD-006667; UA-CL-LWOP-000342–53. Unum interviewed Reidy's treating physicians, when possible. Mr. Corrado did not answer Defendants' repeated efforts to obtain additional details on Reidy's condition, despite Reidy's authorizing release of medical records. UA-CL-LTD-0000656–57, UA-CL-LTD-006667. Dr. Jajodia deferred any opinion on Reidy's disability to her primary care doctor, Dr. Jack Summer, who last treated Reidy in September 2014, before the relevant claims period. UA-CL-LTD-000545. Accordingly, Defendants' review primarily relied on Dr. Silver's statements and records, and their conversations with Reidy. *See, e.g.* UA-CL-LTD-000545.

Defendants denied Reidy's LTD claim on July 30, and then her LWP claims on July 31, 2015. UA-CL-LTD-000687–94; UA-CL-LWOP-000379–84. The stated reasons for the denial was that Reidy had improved between March and May 2014 and could have returned to work before her termination, and that, her symptoms had improved as of January 2015. *See* UA-CL-

LTD-000687–94; UA-CL-LWOP-000379–84. Defendants further noted that Reidy denied that her other medical conditions — migraine headaches and hypothyroidism — were in any way disabling. *See* UA-CL-LTD-000687–94; UA-CL-LWOP-000379–84.

Reidy, through counsel, appealed Unum's decision on January 22, 2016 and submitted additional information to support her claim. *See* UA-CL-LTD-000757–866. The record was supplemented with additional records from Dr. Silver, information regarding Reidy's other medical conditions, and a November 13, 2015 neurorehabilitation evaluation in which psychologist Dr. Rick Parente ("Dr. Parente") administered a series of tests, and concluded that Reidy was "unable to return to her former job." *See* UA-CL-LTD-04095. A substantial body of general medical literature on Reidy's conditions was also submitted. *See* UA-CL-LTD-000758–803; *see also* ECF No. 38 at 13–15.

Dr. Peter Brown, a psychiatrist working full-time as an Unum claims reviewer, reviewed Reidy's appeal. Dr. Brown, noting inconsistencies between Dr. Parente's report and Reidy's medical records as to Reidy's drug and alcohol use and that Reidy's testing scores did not necessarily support the report's conclusion, requested Dr. Parente's raw test data. *See, e.g.* UA-CL-LTD-006874; UA-CL-LTD-006823. Defendants also repeatedly urged Reidy, through counsel, to submit records from her primary psychotherapist, Mr. Corrado, noting that "[t]he lack of these treatment records severely limits our ability to fully evaluate Ms. Reidy's reports of impairing symptoms." *See e.g.* UA-CL-LTD-006823. Although Reidy's counsel notified Unum that they intended to submit Dr. Parente's raw test data, it was not timely provided, and the requests for Corrado's records went unanswered. *See* ECF No. 40-2, UA-CL-LTD-006828.

On March 21, 2016, Defendants issued letters upholding the denial of Reidy's claims, finding that despite Reidy's "chronic and complex psychiatric condition," her symptoms

improved over time and that as of January 29, 2015, she did not meet the plan's definition of long term disability. UA-CL-LTD-6836–46; LA-CL-LWOP-000414–422. The decision also looked more closely at Reidy's chronic migraines and thyroid condition, and found that her physicians and Reidy herself perceived those conditions as "not impairing." UA-CL-LTD-006807–08. UA-CL-LTD-006839; UA-CL-LTD-000681–83.

After Unum issued its decision, Dr. Parente provided Unum the requested raw test data. *See* UA-CL-LTD-006877. Dr. Brown reviewed the data, found it incomplete, and accordingly noted that the data did not "change [his] previous conclusions." UA-CL-LTD-006877. The data was then reviewed by another Unum claims reviewer, Dr. William Black (neuropsychology), who also found the data to be incomplete and of limited assistance. *See* UA-CL-LTD-006872. Defendants took no further action, noting that the appeal decision was already filed, Dr. Parente had not timely submitted *any* raw data, and that Reidy had not requested any further review. UA-CL-LTD-006880.

On August 19, 2016, Reidy filed this action against Defendants under § 502(a)(1)(B) of the Employment Retirement Income Security Act of 1974 ("ERISA"), requesting that this Court declare her entitled to benefits under the Plan. ECF No. 1. She then filed a motion to compel discovery, ECF No. 26, which was denied for "failure to assert particularized facts that render extra-discovery necessary" regarding Unum's conflict of interest in adjudication of her claim. *See* ECF No. 32; *Helton v. AT & T Inc.*, 709 F.3d 343, 352 (4th Cir. 2013); Fed. R. Civ. P. 26(b)(1). On February 9, 2018, Defendants moved for summary judgment, and Reidy thereafter filed a cross-motion for summary judgment. *See* ECF Nos. 37 & 38.

## II. STANDARD OF REVIEW

### a. Summary Judgment

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When both parties file motions for summary judgment, the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Krajewski v. Metropolitan Life Ins. Co.*, No. RDB-08-2406, 2009 WL 2982959, at *4 (D. Md. Sept. 14, 2009) (quoting *Towne Mgmt. Corp. v. Hartford & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985)). If a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record over the averred fact. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

### b. ERISA Administrator Review

When, as here, a benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the Court reviews the administrator's denial of benefits under ERISA using an abuse of discretion standard. *See* ECF Nos. 35 & 38 at 29–30; *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629–30 (4th Cir. 2010). Under the abuse of discretion standard, the Court "must not disturb the [administrator's] decision if it is reasonable, even if the court itself

would have reached a different conclusion." *Fortier v. Principal Life Ins. Co.*, 666 F.3d 231, 235 (4th Cir. 2012).

When the same party is both the claims administrator and the insurer responsible for paying a claim, a structural conflict of interest exists. The conflict does not alter this Court's standard of review; rather the structural conflict may be considered as one of many factors in evaluating the administrator's decision. *See DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 869 (4th Cir. 2011) (internal quotation marks and citation omitted); *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir. 1999); *Ferguson v. United of Omaha Life Ins. Co.*, 3 F. Supp. 3d 474, 481 (D. Md. 2014). The significance accorded to the conflict depends on the circumstances of the particular case. *DuPerry*, 632 F.3d at 869; *Ferguson*, 3 F. Supp. 3d 480–81.

Critically, "[w]here an ERISA administrator rejects a claim to benefits on the strength of substantial evidence, careful and coherent reasoning, faithful adherence to the letter of ERISA and the language in the plan, and a fair and searching process, there can be no abuse of discretion — even if another, and arguably better, decision-maker might have come to a different, and arguably a better, result." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 325 (4th Cir. 2008). While it "is certainly possible that the evidence on each side of a disability dispute might be so lopsided that a decision for the less persuasive one is an abuse of discretion," a court *must* refrain from re-weighing the evidence in close cases, such as this one, and an analysis as to the "greater and lesser persuasiveness" of the physicians' reasoning is inappropriate. *Id.* at 325-26.

The Court considers eight nonexclusive factors in reviewing the administrator's decision, also known as the "*Booth* factors." Not all factors are present in any given case, and include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4)

7

whether the administrator's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the administrator's motives and any conflicts of interest it may have.

*See Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622, 638 (D. Md. 2015); *see also DuPerry*, 632 F.3d at 869.

With this framework in mind, the Court turns to the parties' motions.

## III. DISCUSSION

Under the Plan, a claimant is considered totally disabled and entitled to coverage when she shows she is "limited from performing the material and substantial duties of [her] occupation due to [her] sickness or injury" for a minimum of 365 days. UA-CL-LTD-POL-00016, UA-CL-LTD-POL-00032–35. Reidy argues that Unum was on a "predetermined course" to deny disability benefits. *See* ECF No. 38. Reidy more particularly attacks the adequacy of Defendants' review process, arguing that it was characterized by the reviewing physicians' pervasive, unethical conflicts of interest, and failure to "address nearly the entirety of Ms. Reidy's extensive medical history." *See generally* ECF No. 38. Defendants counter that the claim review process was through and considered all evidence submitted in support of Reidy's LTD claims. ECF No. 35.

    *a. Significance of Social Security Determination*

As an initial matter, Reidy contends reversal is supported because the Social Security Administration found Reidy's effective date of disability to be March 27, 2014. ECF No. 38 at 6; UA-CL-LTD-006884. Social Security determinations, while relevant in ascertaining "the arbitrariness of a decision to terminate benefits under an ERISA plan," are not dispositive. *Graham v. Aetna Life ins. Co.*, No. 7:13-1093-TMC, 2014 WL 4716473, at *8 (D. S. Ca. Sept.

22, 2014) (quoting *Glenn v. MetLife*, 461 F.3d 660, 667 (6th Cir. 2006)). "[B]arring proof that the disability standards for social security and the plan in question are analogous, [the Court] would not consider an SSA award in an ERISA case." *Piepenhagen v. Old Dominion Freight Line, Inc.* 395 F. App'x 950, 958 (4th Cir. 2010) (citing *Smith v. Continental Cas. Co.*, 369 F.3d 412, 420 (4th Cir. 2004) and *Elliott,* 190 F.3d at 607). Reidy has not demonstrated that the Plan's "total disability" triggering coverage mirrors the relevant definition in the SSA's regulations. Thus, Reidy's receipt of social security benefits is of limited weight in the Court's analysis. *See Piepenhagen*, 395 F. App'x at 958.

  *b. Adequacy of Vocational Review*

  Reidy next argues that Defendants "minimized" her job responsibilities so as to facilitate claim denial, and that their categorization of her job description as "Recruiting Director" does not match Reidy's actual work. *See* ECF No. 38 at 18–20. In assessing what kind of job a claimant is expected to perform, administrators must use an "objectively reasonable" description of the claimant's occupation. *Gallagher v. Reliance Stand. Insur. Co.*, 305 F.3d 264, 271 (4th Cir. 2002). Reidy does not specify how "Recruiting Director" fails to capture objectively her work duties, nor does she demonstrate how her actual position was more mentally or physically rigorous than that described for Recruiting Director. *See* ECF No. 38. The Court, therefore, does not find this argument persuasive.

  Rather, the record amply supports that Defendants followed the Plan to arrive at the appropriate category of job by assessing her occupation "as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." UA-CL-LTD-POL-000034; UA-CL-LWOP-000124. To do so, Unum considered information from Patton Boggs and input from Reidy herself, collected through a

9

Work Experience and Education Questionnaire and a February 16, 2015 telephone interview. *See* UA-CA-LTD-000394–95; UA CL-LTD-004122–23; UA-CL-LWOP-000253–54. Reidy self-described her position as Director of Professional Recruitment, and her duties to include recruitment and hiring of law students, as well as supervising new associate programming. *Id.* Unum found that Reidy's position, as described, most closely matched the general occupation in the national economy of "Recruiting Director," defined in Unum's directory as a complex position that required analysis, presentations, "constant social interaction" across multiple organizations, and "frequent adaption to change" and "independent planning." *See* UA-CL-LTD-000396. Unum's chosen vocational label need only capture material and substantial duties to that required by Reidy's actual position. Indeed, nearly all of the qualities that Reidy argues made her job difficult are captured in the Recruiting Director, a job described as cognitively difficult with frequent travel and constant social interaction. *See* UA-CL-LTD-000395–97 (also describing the position as requiring "memory and concentration," supervision of others and considerable personal responsibility, and complex analysis); *see also* UA-CL-LTD-000068–74. Unum's assessment of Reidy's ability to work as in the generic occupation of "Recruitment Director" was not an abuse of discretion.

    *c. Adequacy of Medical Review Process*

Reidy next argues that Defendants' failure to examine her physically, and instead rely solely on "biased" internal physicians, constituted an abuse of discretion warranting reversal. *See* ECF No. 38 at 32–34. It is true that Defendants did not physically examine Reidy. However, neither ERISA nor the Plan required such an examination before making a benefits determination. *See Piepenhagen*, 395 F. App'x at 957 (rejecting argument that plan administrator had duty to conduct independent medical examination before denying benefits

because claimant, not plan administrator, has duty to provide evidence of disability); *Price v. Unum Ins. Co. of America*, No. GJH-16-2037, 2018 WL 1352965, at *11 (D. Md. Mar. 14, 2018) (upholding insurer's peer review of claimant's file for claim based on psychological injury); *Savoy v. Fed. Express Corp. Long Term Disability Plan*, No. DKC-09-1254, 2010 WL 3038721, at *1–2 (D. Md. July 30, 2010) (upholding insurer's reliance on a psychologist's peer review of claimant's file). Only where the administrator *completely* disregards the records and opinions provided by a claimant's treating physicians without explanation does the failure to conduct an examination compel reversal. *See Zhou v. Metro. Life Ins. Co.*, 807 F. Supp. 2d 458, 460–68 (D. Md. 2011) (finding the denial without examination unreasonable where the reviewers did not acknowledge medical records showing the plaintiff expressed suicidal ideation, could not do menial tasks such as "washing the dishes" or driving, and was homeless with little motivation); *Smith v. PNC Financial Serv. Grp.*, No. MJG-15-2232, 2017 WL 3116689, at *13 (D. Md. July 21, 2017) (finding that the administrator's decision was "arbitrary and capricious" because only a "cursory file review" was performed and there was no independent medical examination); *Chilton v. Metro. Life. Ins. Co.*, No. 2:14-cv-67 TS, 2015 WL 2249983, at *6 (D. Ut. May 13, 2015) (finding the lack of independent examination reasonable because the administrator "did not disregard" the treating physicians' opinion and gave "multiple opportunities" for the claimant's doctors to substantiate their opinions "with additional medical evidence."); *accord Sheppard & Enoch Pratt Hosp.*, 32 F.3d 120, 125 (4th Cir. 1994) (finding no abuse of discretion where plan administrator relied on paper reviews of consulting physicians); *Price*, 2018 WL 1352965, at *11 (same).

This is not that case. The record evidence reflects that Defendants conducted multiple phone interviews with Reidy and her treating physicians to assess the severity of her depression.

Defendants further considered all treating physicians' records prior to rendering a decision. Failing to examine Reidy firsthand does not warrant reversal.

Regarding the adequacy of the actual reviews performed, Reidy goes to great lengths to undercut the credentials of Unum's consulting physicians, Drs. Brown, Kletti, and Shipko. Reidy notes that other courts have rejected the physicians' conclusions on occasion, points to unfavorable "reviews," and casts aspersions on the doctors' compensation, work history, and age. *See* ECF Nos. 38 at 23–29 & 38-6; *see also* UA-CL-LTD-000754–000866. Reidy, however, does not successfully demonstrate that these doctors lacked the necessary *bona fides* to render their opinions in this case. Thus, the Court assesses the reliability of the physicians' opinions based on whether they are reasonable and supported by medical records made available to them.

Reidy next argues that the Court should disregard Dr. Brown's written determination because Reidy was not given the opportunity to respond and was thus "sandbagged" by the final claims determination. ECF No. 28 at 15; ECF No. 25-2. Reidy further argues that Dr. Brown's report violates ERISA because "[a]n administrator is bound by its initial decision and cannot later assert a new rationale." ECF No. 38 at 37–38.

Even if Reidy were correct, Dr. Brown's report proffered no new reasons for denying Reidy's claim. Rather Dr. Brown merely responded to the evidence that Reidy submitted on appeal. UA-CL-LTD-006836–46; UA-CL-LWOP-000414–422. Even more fundamental, Reidy's argument rests on a flawed understanding of ERISA. While ERISA does not allow an employer from adding a new reason for claim denial in its final administrative review, *see Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008), ERISA also does not provide the claimant endless opportunities to rebut medical opinions generated during

the process. *See Midgett v. Washington Group Int'l Long Term Disability Plan*, 561 F.3d 887, 895 (8th Cir. 2009); *see also Giles v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 925 F.Supp.2d 700, 717-18 (D. Md. 2002) (noting that courts of appeal uniformly determined that ERISA does not require an insurer to provide a claimant with medical opinion reports prior to issuance of a final decision). Therefore, the Court finds that Unum's process for reviewing Reidy's claim was reasonable and does not support reversal of Unum's benefits denial.

    *d.   Consideration of the Evidence*

Reidy also contends that Defendant's reviewing physicians "failed to address nearly the entirety of Ms. Reidy's extensive medical history" and that their reports consistently minimize her depression. *See generally* ECF No. 38. The record belies Reidy's contention. Defendants' reviewing physicians acknowledge that Reidy struggles with a "chronic and complex psychiatric condition" that was exacerbated by her termination in May 2014. *See* UA-CL-LTD-006820. Defendants also found that with treatment, Reidy's symptoms improved to a "baseline" point so that as of January 29, 2015, she no longer qualified as disabled.

Defendants' determinations were ultimately rendered after fair consideration of competing evidence and opinions. Simply because the Plan Administrator's reviewing physician reaches a conclusion different than the claimant's personal doctors does not render the decision *per se* unreasonable. *Vetter v. American Airlines, Inc. Pilot Long-Term Disability Plan*, 299 F. Supp. 3d 714, 726 (D. Md. 2018) (noting that "when there are conflicting medical opinions" the administrator "has the discretion to deny benefits based on one set of opinions) (citing *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F. 3d 335, 342-43 (4th Cir. 2000)). Where the administrator considers and explains any differences between its decision and that recommended by the individual's physicians, and the decision is supported by "substantial

13

evidence," it will be upheld. *See Vetter*, 299 F. Supp. 3d at 729; *see also Soloman v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 860 F.3d 259 (4th Cir. 2017). "Substantial evidence," is " 'more than a scintilla but less than a preponderance,' " such that a " 'reasoning mind would accept [the evidence] as sufficient to support a particular conclusion.' " *Donnell v. Metro. Life. Ins. Co.*, 165 F. App'x 288, 295 (4th Cir. 2006) (quoting *LeFebre v. Westinghouse Elec. Cop.*, 747 F.2d 197, 208 (4th Cir. 1984)); *see also Everette v. Liberty Life Assurance Co. of Boston*, No. TDC-16-1248, 2017 WL 2829673, at *7 (D. Md. June 29, 2017).

The record evidence demonstrates that Unum's review was a fair and searching process. Contrary to Reidy's allegations, the record demonstrates a comprehensive review history, which documents facts that both support and undermine a finding of disability. *See* UA-CL-LTD-000244–48; UA-CL-LTD-000408–11; UA-CL-LWOP-000291–94; UA-CL-LTD-000507–10; UA-CL-LTD-000678; UA-CL-LTD-006816–20. Defendants also, and in good-faith, augmented the review process with additional records from Reidy's treating physicians. *See, e.g.* UA-CL-LTD-006823; UA-CL-LTD-006874.

Notably, all physicians agreed that Reidy suffered an intense and likely disabling period of depression through much of 2014. However, Drs. Kletti, Shipko, and Brown noted that beginning in September 2014, and much more consistently from January through March 2015, Reidy's treating physicians documented improvements in her depressive symptoms and medication side effects. *See, e.g.* UA-Cl-LTD-000409; UA-CL-LTD-000507–09; UA-CL-LTD-00542–45; UA-CL-LTD-000651–52. These findings are corroborated in interviews of Reidy and Dr. Silver which reflect a markedly brighter affect and mood, and renewed efforts on her part to explore career opportunities and participate in other activities, such as becoming a dog trainer and volunteering at a horse farm. *See* UA-CL-LTD-000411; UA-CL-LTD-000675; UA-

CL-LTD-006820. Although Dr. Silver still opined Reidy to be disabled in March 2015, UA-CL-LTD-000652, Defendants did not reject his opinion out of hand. Rather, Defendants determined that Dr. Silver's opinion was of limited weight because it was unsupported by data or specific diagnostic impressions regarding Reidy's cognitive limitations. Dr. Silver also emphasized that Reidy was a "woman with very longstanding depression who has managed to work over many years, but not easily at times and not always consistently, and when pressed for more detail, Dr. Silver did not focus on Reidy's *current* symptoms to support his determination, but instead focused on the months immediately following her termination. UA-CL-LTD-006802–3; UA-CL-LTD-006819.

Based on this record evidence, Defendant's conclusion that insufficient evidence existed "to support continuous psychiatric impairment from last day worked March 26, 2014 through March 26, 2015" is reasonable. In making this determination, Defendant found noteworthy that contemporaneous medical records lacked detail regarding the nature and severity of Reidy's symptoms; that Reidy's treating physicians gave conflicting diagnostic impressions, and that neither Dr. Jajodia or Mr. Corrado would provide a recommendation for Reidy's disability claim. *See, e.g.* UA-CL-LTD-000546; UA-CL-LTD-006802–11. Defendant also gave Reidy opportunities to supplement the record with her treating physicians' notes and Dr. Parente's raw test data, further reflecting that the process was reasoned and principled.

In the end, Defendant's determination was one that a "reasoning mind would accept [the evidence] as sufficient" to deny long-term disability benefits. *See Everette*, 2017 WL 2829673, at *7; *see also Price*, 2018 WL 1752965, at *12–13; *Graham*, 2014 WL 4716473, at *7–8; *cf. Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 20–21 (4th Cir. 2014) (finding that the administrator did not meet its obligations when it failed to contact the claimant's doctors for

records and "chose to remain willfully blind to readily available information that may well have confirmed [the claimant's] theory of disability.").

### e. Conflict of Interest or Bias

Reidy attempts to make much of Unum's "sordid history" as a biased claims reviewer in urging the Court to import the same bias here. *See* ECF Nos. 26-1 7–9 & 39 at 39 (arguing that all of the employees "have long histories of unfair claims review and have been clearly influenced by Unum's financial incentive plan"). It is undisputed that fourteen years ago, Unum was penalized for bad claims practices. *See* UA-CL-LTD-000835–61; *see also* ECF Nos. 26 at 1–11 & 38 at 39. Reidy further argues that the 2008 financial crisis renders Unum ever more motivated to deny otherwise valid disability claims to enhance its financial bottom line. ECF No. 38 at 39.

The relevance of such bias evidence is heavily fact specific and turns on whether the claimant can show such bias affected in some way the administrator's decision. *Glenn*, 553 U.S. at 108; *Durakovic v. Building Serv. 32 BJ Pension Fund*, 609 F.3d 133, 138 (2d Cir. 2010); *see also Griffin v. Hartford Life & Accident Ins. Co.*, No. 17-1251, 2018 WL 3624872, at *9 (4th Cir. July 31, 2018); *DuPerry*, 623 F.3d at 869–74; *Elliott*, 190 F.3d at 605. No such connection can be made here. Sweeping statements about Unum's motives, absent evidence of actual bias as to this claim, does not command reversal. *See* ECF No. 32 at 4–6; *see also Price*, 2018 WL 1352965, at *16; *see also Kamerer v. Unum Life Insurance Company of America*, 251 F. Supp. 349, 352 (D. Mass 2017). If the law were otherwise, Unum could never escape its past misdeeds, no matter how isolated or remote in time. Reidy's accusations do not render Defendant's decision an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, ECF No. 35, is GRANTED, and Reidy's cross-motion for summary judgment, ECF No. 38, is DENIED. A separate Order follows.

 8/7/2018 / /s/
Date / Paula Xinis
United States District Judge